IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARTISHA STEVENSON
Individually and on behalf of others
similarly situated, et al.,

    Plaintiffs,

      v.

THE GREAT AMERICAN DREAM,
INC. doing business as
Pinups, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-3359-TWT

**OPINION AND ORDER**

The Plaintiffs are dancers at Pin Ups Nightclub seeking damages for violation of the minimum wage and overtime wage requirements of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").  It is before the Court on the Plaintiffs' Motion for Partial Summary Judgment [Doc 53]. For the reasons set forth below, the Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

**I. Background**

The Plaintiffs are current and former adult entertainers at Pin Ups Nightclub, run by the Defendant The Great American Dream, Inc. The Plaintiffs were compensated exclusively through tips. (Pls.' Statement of Facts ¶¶ 6-7.) They brought

suit alleging that--because they were "employees"--they were entitled to minimum wage and overtime compensation under the FLSA. On December 17, 2012, they moved for conditional certification of a collective action class [Doc. 15], which was granted on August 14, 2013 [Doc. 50]. The class closed on December 13, 2013 [Doc. 52]. Now, the Plaintiffs move for partial summary judgment on one question: Were the Plaintiffs "employees" under the FLSA? The Plaintiffs argue that they were. The Defendants assert three responses. First, they argue that James W. Lee, Sr. was erroneously included as a defendant. Second, they argue that additional discovery is needed on new opt-in Plaintiffs. Third, they argue that the entertainers were properly classified as independent contractors.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the

pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990).

A party may move for summary judgment on a part of a claim or defense. FED. R. CIV. P. 56(a). "A[n] . . . order granting partial summary judgment from which no immediate appeal lies is merged into the final judgment and reviewable on appeal from that final judgment. . . .An order granting [summary] judgment on certain issues is a judgment on those issues. It forecloses further dispute on those issues at the trial stage. An order denying a motion for partial summary judgment, on the other hand, is merely a judge's determination that genuine issues of material fact exist. It is not a judgment, and does not foreclose trial on the issues on which summary judgment was sought." Lind v. United Parcel Serv., Inc., 254 F.3d 1281, 1284 n.4 (11th Cir. 2001) (quoting Glaros v. H.H. Robertson Co., 797 F.2d 1564, 1573 (Fed. Cir. 1986)).

### III. Discussion

The Defendants' first two arguments are easily disposed of. First, the Court need not consider at this stage whether Lee is an appropriate defendant. That issue has no bearing on the narrow question addressed by the motion for partial summary

judgment. In fact, this Court previously rejected a similar argument. See Clincy v. Galardi South Enterprises, Inc., 808 F. Supp. 2d 1326, 1329 (N.D. Ga. 2011) ("The parties disagree as to which Defendant(s) employs the entertainers if the entertainers are found to be employees, but the resolution of that question is immaterial to the determinations the Court needs to make in resolving the pending Motions for Summary Judgment.").  Second, additional discovery is unnecessary to rule on this motion. The Defendants argue that some of the opt-in Plaintiffs may have worked for shorter intervals of time. (Defs.' Resp. to Mot. for Summ. J., at 6.) However, the determination of employee-status will not vary based on minor distinctions. An entertainer who worked under identical circumstances as the other Plaintiffs will not be classified differently simply because she worked for a shorter period of time. See Reich v. Priba Corp., 890 F. Supp. 586, 591 (N.D. Tex. 1995) (Only 10 out of 1,200 entertainers actually performed at the club on a consistent basis, yet the court made a single determination regarding whether they were all employees or independent contractors.). The Defendants also argue that at least one Plaintiff signed an arbitration agreement. (Defs.' Resp. to Mot. for Summ. J., at 6.) But the Court is not making a determination regarding who is entitled to relief. It is possible that a Plaintiff held to be an "employee" may still be denied relief by this Court if the Defendants file a motion to compel arbitration.

It is clear that the Plaintiffs were "employees" under the FLSA. "The FLSA's overtime and minimum wage protections . . . extend only to 'employees.'" <u>Scantland v. Jeffry Knight, Inc.</u>, 721 F.3d 1308, 1311 (11th Cir. 2013). The FLSA defines "employee" broadly.[1] <u>Id.</u> "Independent contractors," however, do not fall within that definition. <u>Id.</u> To determine whether a party was an employee or an independent contractor, the Court looks to the "economic reality of the relationship between the alleged employee and alleged employer." <u>Id.</u> (internal quotation marks omitted). The inquiry focuses on the level of economic dependence. <u>Id.</u> at 1312. "[T]he final and determinative question must be whether the . . . personnel are so dependent upon the business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside its ambit." <u>Usery v. Pilgrim Equip. Co., Inc.</u>, 527 F.2d 1308, 1311-12 (5th Cir. 1976).[2] "The concept has also been put in terms

_____

[1] The statutory definition of "employee" in the FLSA provides little guidance. <u>See</u> <u>Rutherford Food Corp. v. McComb</u>, 331 U.S. 722, 728 (1947) ("[T]here is in the Fair Labor Standards Act no definition that solves problems as to the limits of the employer-employee relationship under the Act."). "Employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "To employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203(g).

[2] Decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981 are binding precedent on Eleventh Circuit courts. <u>See</u> <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1208-09 (11th Cir. 1981).

of whether the individual is 'in business for [her]self.'" Mednick v. Albert Enterprises, Inc., 508 F.2d 297, 302 (5th Cir. 1975).

The Court may consider various factors, such as (1) degree of control, (2) opportunity for profit or loss, (3) investment in equipment or additional personnel required, (4) skill requires, (5) duration, and (6) the extent to which the service is integral to the alleged employer's business. See Scantland, 721 F.3d at 1312. "[T]hese six factors are not exclusive and no single factor is dominant." Id. The Court must assess the facts relevant to these factors "through the lens of 'economic dependence' and whether they are more analogous to the 'usual path' of an employee or an independent contractor." Id.

This standard is not susceptible to a simple application. See Usery, 527 F.2d at 1311 ("The test is not one which allows for a simple resolution of close cases."). When a disposition in either direction can be justified, the Court must err in favor of a broader reading of "employee."[3] Id. ("Given the remedial purposes of the legislation,

---

[3] The case Mednick v. Albert Enterprises, Inc., 508 F.2d 297 (5th Cir. 1975) demonstrates just how broadly the term "employee" is construed. There, the plaintiff oversaw cardrooms in an apartment complex. Id. at 298. In addition to renting out the rooms, he sold candy, card decks, soft drinks, and cigarettes. Id. He financed the inventory himself. Id. He identified himself as "self-employed" on his tax forms. Id. at 299. The defendant did not set his hours, and did not even require him to be present. Id. Even more, the plaintiff hired and fired his own employees, albeit with input from the defendant's apartment manager. Id. The plaintiff received no orders regarding how he was to perform his cardroom services. Id. He was also permitted to hold other jobs.

an expansive definition of 'employee' has been adopted . . . a constricted interpretation of the phrasing by the courts would not comport with its purpose."). To conclude that a party is an "independent contractor" because she bears some of its characteristics would "invite adroit schemes by some employers and employees to avoid the immediate burdens at the expense of the benefits sought by the legislation." Id.; see also Mednick, 508 F.2d at 303 ("An employer cannot saddle a worker with the status of independent contractor, thereby relieving itself of its duties under the F.L.S.A. by granting [her] some legal powers where the economic reality is that the worker is not and never has been independently in the business which the employer would have [her] operate.").

Whether the Plaintiffs are "employees" under the FLSA is a question of law for the Court. See Antenor v. D & S Farms, 88 F.3d 925, 929 (11th Cir. 1996) ("A determination of employment status under the FLSA . . . is a question of law . . . ."); Patel v. Wargo, 803 F.2d 632, 634 n.1 (11th Cir. 1986) ("The weight of authority in other circuits supports our characterization of the question as one of law, with the subsidiary findings being issues of fact."). The Defendants frequently reiterate that the facts must be viewed in the light most favorable to the Defendants. However, there is

---

Id. at 301. The court still concluded that the plaintiff was an "employee." The court noted that the defendant provided the facility and equipment, controlled who could use the cardrooms, and was responsible for advertisements. Id. at 299-301.

little dispute regarding the underlying facts of the Plaintiffs' employment arrangement with the Defendants.[4]

To begin, this is not a matter of first impression for this Court. In <u>Clincy v. Galardi South Enterprises, Inc.</u>, 808 F. Supp. 2d 1326 (N.D. Ga. 2011), this Court found that adult entertainers--working under conditions similar to the Plaintiffs in this action--were "employees" protected by the FLSA. Many other courts have reached the same conclusion. <u>See</u> <u>Reich v. Circle C. Investments, Inc.</u>, 998 F.2d 324 (5th Cir. 1993); <u>Reich v. Priba Corp.</u>, 890 F. Supp. 586 (N.D. Tex. 1995); <u>Harrell v. Diamond A Entertainment, Inc.</u>, 992 F. Supp. 1343 (M.D. Fla. 1997); <u>Morse v. Mer Corp.</u>, 1:08-CV-1389-WTL-JMS, 2010 WL 2346334 (S.D. Ind. June 4, 2010); <u>Hart v. Rick's Cabaret Intern., Inc.</u>, No. 09 Civ. 3043, 2013 WL 4822199 (S.D.N.Y. Sept. 10, 2013).

Here, five out of the six factors support finding "employee" status. First, Pin Ups exercised a significant amount of control over the Plaintiffs. The Plaintiffs were issued a document titled "General Policies and Procedures." (Pls.' Statement of Facts

---

[4] The only three genuine points of dispute are (1) whether tip outs were mandatory, (2) whether there was a minimum amount for dances performed in the VIP room, and (3) whether attendance at Sunday meetings was mandatory. Given all of the other factors, construing these three issues in the light most favorable to the Defendants would not produce a different result.

¶ 59.) These rules laid out standards for appropriate dress[5] and how the entertainers were to conduct themselves on stage.[6] (Id., Ex. 4.) They also stipulated that the DJ would ultimately select the music that the entertainers would perform to. (Id.) These rules applied not only to how the Plaintiffs conducted themselves on the main stage, but also to how they conducted themselves in the VIP room. (Id.) Further, these rules were enforced. Violations could result in dismissal. (Id. ¶¶ 16-17.) The "house moms" made sure that the Plaintiffs complied with the appearance standards. (Id. ¶ 23.) If there was a dispute regarding proper dress, the manager would make the final call. (Id. 43.) In addition to these regulations, the Plaintiffs were required to pay several fees. Upon arriving for a shift, they had to pay a house fee. (Id. ¶¶ 31-32.) They also paid fees that went to the house mom and the DJ. (Id. ¶¶ 22, 24.) Moreover, Pin Ups was responsible for settling disputes arising within the club. For example, disputes concerning the entertainer tip pool were resolved by the house mom and the manager.

---

[5] "Nails must be manicured and polished. Makeup should be professionally applied and hair should be styled." (Pls.' Statement of Facts, Ex. 4.) "All costumes must have side releases or break-away clasps. There is to be no stepping out of outfits." (Id.) "When you are not on the main stage, you should be wearing the following: 1.) bra/top, 2.) t-back/thong, 3.) cover/wrap, and 4.) high-heel shoes/boots with heels. You should never be on the floor without a cover/wrap." (Id.)

[6] "Never dance in a lewd fashion or in a way that stimulates any type of sex act." (Pls.' Statement of Facts, Ex. 4.) "Do not leave the stage until the next performer comes on." (Id.) "Do not eat, drink, or chew gum while on stage." (Id.) "Work the entire stage." (Id.) "Do not make contact with customers while dancing. (Id.)

(Id. ¶ 49.) Pin Ups also handled disputes between the Plaintiffs and the customers. (Id. ¶ 18.) The Defendants argue that the entertainers could set their own schedules. But this was true in several cases where courts found that the entertainers were nonetheless employees. See, e.g., Priba Corp., 890 F. Supp. at 591; Harrell, 992 F. Supp. at 1348. Control over scheduling is minimal compared to all of the elements of the job that Pin Ups controlled. See Usery, 527 F.2d at 1312 ("Each operator is given the right to set her own hours . . . [i]n the total context of the relationship . . . the right to set hours [does not indicate] such lack of control by [the defendant] as would show these operators are independent from it. . . .[c]ontrol is only significant when it shows an individual . . . stands as a separate economic entity."). Here, "the entertainer's economic status is inextricably linked to those conditions over which defendants have complete control." Priba Corp., 890 F. Supp. at 592.

Second, the Plaintiffs and Pin Ups did not share equally in the opportunities for profit and loss. Although the Plaintiffs risked a loss equal to the fees they paid-- assuming they made nothing in tips--"the risk of loss [was] much greater for the Club." Clincy v. Galardi South Enterprises, Inc., 808 F. Supp. 2d 1326, 1346 (N.D. Ga. 2011). It bore the vast majority of overhead costs. Pin Ups also had more of an impact on potential profits. It was "primarily responsible for attracting customers to the Club, as decisions about marketing and promotions for the Club, its location, its

maintenance, aesthetics, and atmosphere, and food and alcohol availability and pricing are made by" Pin Ups. Id. The Defendants argue that the entertainers could earn more profit based on their interactions with the customers. (Defs.' Resp. to Mot. for Summ. J., at 17-18.) This argument was rejected in Clincy. See Clincy, 808 F. Supp. 2d at 1345-46. The Plaintiffs' control over profits was minor compared to Pin Ups'. "[B]ut for defendants' provision of the lavish work environment, the entertainers at the club likely would earn nothing." Priba Corp., 890 F. Supp. at 593.

Third, Pin Ups invested far more than the Plaintiffs on necessary personnel and equipment. It provided bartenders, waitresses, cashiers, security staff, and disc jockeys. (Pls.' Statement of Facts ¶¶ 12-13, 70.) Pin Ups also provided the facility, the stages, and the poles. (Id. ¶ 71.) As other courts have noted, the amount spent on clothing, hair styling, and make-up "is minor when compared to the club's investment." Harrell, 992 F. Supp. at 1350; see also Reich, 998 F.2d at 328 ("A dancer's investment in costumes and a padlock is relatively minor to the considerable investment Circle C has in operating a nightclub."). Many employees in many different fields are also financially responsible for maintaining an appearance suitable to their respective work environments.

Fourth, little skill is required. Pin Ups does not require that its entertainers undergo formal training. (Id. ¶ 73.) The Defendants argue that the entertainers get

better as they gain experience. Although different entertainers may possess varying degrees of skill, there is no indication that a high degree of skill or experience is *necessary*. Taking your clothes off on a nightclub stage and dancing provocatively are not the kinds of special skills that suggest independent contractor status. See Priba Corp., 890 F. Supp. at 593 ("The scope of her initiative is restricted to decisions involving what clothes to wear or how provocatively to dance. Such limited initiative is more consistent with the status of an employee than an independent contractor.").

Fifth, and most definitively, the Plaintiffs' services were an integral part of Pin Ups' business. Pin Ups is an adult entertainment club and so it needs adult entertainers. Kelly Campbell, the general manager of Pin Ups, acknowledged this. (Campbell Dep. at 20.) ("Because we are an entertainment facility and we could not be such without an entertainer."). Pin Ups' General Policies and Procedures issued to the entertainers states: "Your job as an entertainer is the most important one in our organization." (Pls.' Statement of Facts, Ex. 4.)

Only the duration factor supports the Defendants' position. There is no indication that all of the Plaintiffs worked at Pin Ups for an extended period of time, and all of the Plaintiffs were permitted to work as entertainers at other clubs. However, "[t]hat dancers were free to work at other clubs or in other lines of work, and that they were not permanent employees, do not distinguish them from countless

workers in other areas of endeavor who are undeniably employees under the FLSA--

for example, waiters, ushers, and bartenders." <u>Hart</u>, 2013 WL 4822199, at *14. In

light of the other factors, this alone cannot nudge the Plaintiffs out of the protective

sphere of the FLSA.[7] <u>See</u> <u>Reich</u>, 998 F.2d at 328-29 ("The transient nature of the work

force is not enough here to remove the dancers from the protections of the FLSA. In

analyzing the . . . factors, we must not lose sight of economic reality.").

## IV. Conclusion

For these reasons, the Court GRANTS the Plaintiffs' Motion for Partial

Summary Judgment [Doc. 53].

SO ORDERED, this 31 day of December, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[7] The Defendants also argue that the Plaintiffs previously believed they were independent contractors and that this factors into the analysis. (Defs.' Resp. to Mot. for Summ. J., at 22.) However, the Plaintiffs' subjective belief is not a relevant consideration. <u>See</u> <u>Usery</u>, 527 F.2d at 1315 ("We reject . . . the uncontradicted testimony that the operators believed they were, in fact, in business for themselves as controlling FLSA employee status . . . subjective intent [does not] mandate the outcome in these cases.").