IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARTISHA STEVENSON
Individually and on behalf of others
similarly situated, et al.,

    Plaintiffs,

      v.

THE GREAT AMERICAN DREAM,
INC. doing business as
Pinups, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-3359-TWT

# OPINION AND ORDER

This is an FLSA overtime case. It is before the Court on the Plaintiff Kwanza Edwards' Motion for Reconsideration [Doc. 109]. For the reasons set forth below, the Plaintiff's Motion for Reconsideration [Doc. 109] is DENIED.

## I. Background

The Plaintiffs Martisha Stevenson and Elisha Hunter – former adult entertainers at Pin Ups Nightclub – brought suit alleging that they were entitled to minimum wage and overtime compensation under the FLSA. On December 17, 2012, they moved for

conditional certification of a collective action class,[1] which was granted on August 14, 2013.[2] The Plaintiff Kwanza Edwards filed an opt-in form to become part of the collective action class on October 7, 2013.[3] However, on February 24, 2013 – after Stevenson and Hunter had moved for conditional certification, but before Edwards had opted in – Edwards signed an arbitration agreement.[4] The Defendant filed a motion to compel Edwards to arbitrate her claim, which the Court granted on January 16, 2014.[5] On January 22, 2014, Edwards filed her first Motion for Reconsideration,[6] which was denied.[7] Edwards now again  moves the Court to reconsider its ruling.

## II. Legal Standard

---

[1]     [Doc. 15].

[2]     [Doc. 50].

[3]      She originally filed her form on October 2, 2013 [Doc. 56-1], but then filed a redacted version on October 7, 2013 [Doc. 57-1].

[4]     Adams Decl., Ex. A.

[5]     [Doc. 86].

[6]     [Doc. 87].

[7]     [Doc. 99].

Local Rule 7.2 provides that motions for reconsideration are not to be filed "as a matter of routine practice," but only when "absolutely necessary."[8] A party may move for reconsideration only when one of the following has occurred: "an intervening change in controlling law, the availability of new evidence, [or] the need to correct clear error or prevent manifest injustice."[9] Further, a party "may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." [10]

---

[8]     L.R. 7.2E.

[9]     Godby v. Electrolux Corp., No. 1:93-CV-0353-ODE, 1994 WL 470220, at *1 (N.D. Ga. May 25, 1994).

[10]     Brogdon v. National Healthcare Corp., 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000); see also Godby, 1994 WL 470220, at *1 ("A motion for reconsideration should not be used to reiterate arguments that have previously been made ... '[It is an improper use of] the motion to reconsider to ask the Court to rethink what the Court [has] already thought through-rightly or wrongly.'") (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va.1983)) (alterations in original); In re Hollowell, 242 B.R. 541, 542-43 (Bankr. N.D. Ga. 1999) ("Motions for reconsideration should not be used to relitigate issues already decided or as a substitute for appeal ... Such motions also should not be used to raise arguments which were or could have been raised before judgment was issued.").

### III. Discussion

Edwards argues that the Court erred in finding that the arbitration agreement was not unconscionable. Under Georgia law, the "unconscionability doctrine contemplates both procedural unconscionability, which addresses the process of making the contract, and substantive unconscionability, which looks to the contractual terms themselves."[11] In moving the Court to reconsider its ruling, Edwards focuses not so much on the content of the arbitration agreement, or the procedure by which it was executed, but rather on the *time* at which it was executed. Edwards argues that an otherwise permissible arbitration agreement is unconscionable if it was executed during the pendency of a collective action for which the signatory may potentially have been a participant. This argument fails. Regardless of whether there is a pre-existing collective action, the effect of the arbitration agreement is the same: it prevents the signatory from litigating her FLSA claim in a judicial forum. In her Motion for Reconsideration, the Plaintiff does not deny that – in Caley v. Gulfstream Aerospace Corp.[12] – the Eleventh Circuit stated that a compulsory arbitration

---

[11]    Cappuccitti v. DirectV, Inc., 623 F.3d 1118, 1124 (11th Cir. 2010) (internal quotation marks omitted).

[12]    428 F.3d 1359 (11th Cir. 2005).

agreement issued to an employee is not *per se* unconscionable.[13] The Plaintiff similarly concedes that – according to <u>Caley</u> – an arbitration agreement is not unconscionable simply because it requires a party to forfeit her right to take part in a collective action.[14] It is thus unclear why, for the unconscionability analysis, it makes any difference when the collective action was initiated.

In response, Edwards argues that the Eleventh Circuit in <u>Billingsley v. Citi Trends, Inc.</u>[15] found that an arbitration agreement executed during the pendency of a collective action was unconscionable.[16] This is incorrect. In <u>Billingsley</u>, the district court had cited two bases for not enforcing an arbitration agreement: (1) the agreement was unconscionable, and (2) the court could set aside the arbitration agreement using its inherent authority to supervise and manage a collective action.[17] In affirming the judgment, the Eleventh Circuit expressly noted that it was only relying on the latter

---

[13]     <u>See id.</u> at 1367 ("[C]ompulsory arbitration agreements are . . . common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate . . . rights under . . . federal statutes.").

[14]     <u>See id.</u> at 1378 ("The plaintiffs . . . argue that the [agreement] is unconscionable because it precludes class actions . . . [w]e disagree.").

[15]     No. 13-12561, 2014 WL 1199501 (11th Cir. Mar. 25, 2014).

[16]     Pl.'s Second Mot. for Reconsideration, at 6.

[17]     <u>See Billingsley</u>, 2014 WL 1199501, at *5.

ground.[18] It did not address unconscionability.[19] Edwards then contends that the arbitration agreement "divest[s]" her of the "right to participate in the pending litigation[]."[20] But the same could be said if the arbitration agreement had been signed *prior* to the filing of this action – it still would have inhibited Edwards from opting-in.[21] Again, this argument does not support Edwards' assertion that the arbitration agreement is unconscionable due to the time at which it was executed.

The Court also rejects Edwards' arguments for why the Court, pursuant to its inherent authority to manage a collective action, ought to disregard the arbitration agreement. The Court has "broad authority to exercise control over the collective action and to govern the conduct of counsel and parties in the collective action."[22] This

---

[18]     See id. at *8 n.12 ("[O]ur affirmation of the district court's exercise of its managerial discretion does not require us to determine whether the district court lacked authority to consider issues related to the arbitration agreements' enforceability or formation.").

[19]     See id.

[20]     Pl.'s First Mot. for Reconsideration, at 9.

[21]     Additionally, the Eleventh Circuit recently held that the FLSA permits a party to waive her right to proceed as part of a collective action. See Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1334 (11th Cir. 2014) ("After examining the FLSA's text, legislative history, purposes, and . . . Supreme Court decisions, we discern no 'contrary congressional command' that precludes the enforcement of plaintiffs' Arbitration Agreements and their collective action waivers.").

[22]     Id. at *6.

includes the "authority to prevent confusion and unfairness concerning an FLSA collective action."[23] This authority is necessary here because "*ex parte* communication with putative FLSA collective members *about the case* has an inherent risk of prejudice and opportunities for impropriety."[24] Here, as Edwards herself acknowledges, the Defendant did not communicate with her about this case.[25] The Defendant simply did what it was allowed to do: it "require[d] [its] employee[s] to arbitrate, rather than litigate, rights under various federal statutes."[26] Although this may incidentally affect the litigation by reducing the total number of participants, that alone does not compel the Court to disregard an otherwise valid arbitration agreement.

In response, Edwards cites to multiple out-of-Circuit decisions, none of which stand for the proposition that an arbitration agreement executed during a collective action suit is presumptively an impermissible intrusion upon a court's managerial

---

[23]   Id.

[24]   Id. (emphasis added).

[25]   Pl.'s First Mot. for Reconsideration, at 9.

[26]   Caley, 428 F.3d at 1367; see also In re Checking Account Overdraft Litig., 459 Fed. Appx. 855, 859 (11th Cir. 2012) ("Although the district court found troubling that the clause was presented . . . 'on a take-it-or-leave-it basis with no opt-out provision,' under Georgia law, an adhesion contract is not per se unconscionable.").

authority. For example, in <u>Williams v. Securitas Sec. Services USA, Inc.</u>[27] the Eastern District of Pennsylvania invalidated an arbitration agreement because it "did not require an employee to sign the document before it [became] effective," and because "the agreement [was] written in single-spaced, small type and crafted so as not to be easily understood by lay persons."[28] Similarly, in <u>Piekarski v. Amedisys Illinois, LLC</u>,[29] the Northern District of Illinois invalidated an arbitration agreement because "it [was] likely that . . . [the] employees did not understand they would be bound by [the] agreement . . . unless they affirmatively opted-out."[30] Edwards does not allege that similar circumstances are present here.

Edwards then argues that the Defendant ought to have informed her of the current litigation.[31] But it is unclear how the Defendant's failure to discuss this case with Edwards interfered with the Court's managerial authority. To the extent that this is another argument for why the arbitration agreement is unconscionable, the Court is still unpersuaded. Even if Edwards was unaware of this litigation when she signed

---

[27]   CIV.A. No. 10-7181, 2011 WL 2713741 (E.D. Pa. July 13, 2011).

[28]   <u>Id.</u> at *2-3.

[29]   No. 12-CV-7346, 2013 WL 6055488 (N.D. Ill. Nov. 12, 2013).

[30]   <u>Id.</u> at *3.

[31]   Pl.'s First Mot. for Reconsideration, at 9.

the arbitration agreement, she does not deny that the text of the arbitration agreement made it clear to her that she could not participate in an FLSA collective action suit, pre-existing or not.

Finally, Edwards argues that the Court ought to hold an evidentiary hearing. In some circumstances, "evidentiary hearings are necessary."[32] They may be required, for example, when there is a genuine dispute over material facts.[33] Here, the Defendant correctly points out that there is little dispute regarding the pertinent facts.[34] Indeed, other than referencing the time at which the arbitration agreement was signed, and the inherent bargaining power asymmetry found in any employer-employee relationship, Edwards points to nothing else that she believes was suspect about the manner in which the agreement was executed. Thus, the Court denies Edwards' request for an evidentiary hearing. This is not an exceptional case and an interlocutory appeal would not materially advance the ultimate termination of the litigation. Therefore, the request to certify the Order for an interlocutory appeal is denied.

---

[32]    Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988).

[33]    See Love v. Deal, 5 F.3d 1406, 1409 (11th Cir. 1993).

[34]    Def.'s Resp. to Pl.'s First Mot. for Reconsideration, at 8.

## IV. Conclusion

For these reasons, the Plaintiff Kwanza Edwards' Motion for Reconsideration

[Doc. 109] is DENIED.

SO ORDERED, this 15 day of July, 2014.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge