IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARTISHA STEVENSON
Individually and on behalf of others
similarly situated, et al.,

    Plaintiffs,

      v.

THE GREAT AMERICAN DREAM,
INC. doing business as
Pinups, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-3359-TWT

## OPINION AND ORDER

    This is an FLSA overtime case. It is before the Court on the Defendants'
Motion to Compel Arbitration and Dismiss the claims of the Plaintiffs Quomiesha
Cash, Lakisha Walker, Meyoshi Jones, Cynthia Robinson, Dakeisha Jones, Kacie
Miller, Rashonda Walton, Shemica Pace, Mary Freeman, Attoiya Griffin, Precious
Montgomery, Tasia Colbert, Shardaya Cohen, Jasmine Cumming, Theresa Dasher,
Montyba Dennis, Margaret Harvey, and Keyarina Amey [Doc. 91], and the
Defendants' Motion to Dismiss for Untimeliness [Doc. 89]. For the reasons set forth
below, the Defendants' Motion to Compel Arbitration and Dismiss [Doc. 91] is

GRANTED and the Defendants' Motion to Dismiss for Untimeliness [Doc. 89] is DENIED.

## I. Background

The Plaintiffs – current and former adult entertainers at Pin Ups Nightclub – brought suit alleging that they were entitled to minimum wage and overtime compensation under the FLSA. On December 17, 2012, they moved for conditional certification of a collective action class,[1] which was granted on August 14, 2013.[2] Kwanza Edwards filed an opt-in form to become part of the collective action class on October 7, 2013.[3] The Defendants moved to dismiss Edwards' claim because she had signed an arbitration agreement, and the Court granted this motion on January 16, 2014.[4] Since then, many other Plaintiffs have opted-in to this lawsuit. The Defendants now claim that, like Edwards, several of these opt-in Plaintiffs signed arbitration agreements and so their claims must be dismissed as well. The Defendants also claim that multiple opt-in Plaintiffs submitted their consent forms past the deadline set by the Court, and so their claims must also be dismissed.

---

[1]      [Doc. 15].

[2]      [Doc. 50].

[3]      [Doc. 57-1].

[4]      [Doc. 86].

## II. Legal Standard

The "liberal federal policy favoring arbitration agreements . . . is at bottom a policy guaranteeing the enforcement of private contractual arrangements."[5] When considering a motion to compel arbitration, the Court must first "determine whether the parties agreed to arbitrate that dispute."[6] If they have, the Court must then determine whether the arbitration clause is valid. It may be unenforceable on grounds that would permit the revocation of any contract, such as fraud or unconscionability.[7] There may also be legal constraints precluding arbitration, such as a clear congressional intention that a certain claim be heard in a judicial forum.[8] As "a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved

---

[5]     Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985).

[6]     Id. at 626.

[7]     Id. at 627 ("[C]ourts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'") (citing 9 U.S.C. § 2).

[8]     Id. at 628 ("Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.").

in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."[9]

## III. Discussion

The Defendants argue that multiple opt-in Plaintiffs signed arbitration agreements that cover the FLSA claims they are asserting. In response, these Plaintiffs rehash an argument that their co-Plaintiffs made earlier in this litigation: that the arbitration agreements were executed during the pendency of this collective action, and so they are *per se* unconscionable. The Court has already addressed – and rejected – this argument.[10] Accordingly, because the Plaintiffs do not dispute that their claims fall within the scope of the arbitration agreements, the Defendants' Motion to Compel Arbitration and Dismiss must be granted.

Additionally, the Defendants argue that several opt-in Plaintiffs submitted their consent forms to the Plaintiffs' counsel past the deadline set by the Court. Specifically, the Court stated that "the Consent Forms must be dated and received by [Plaintiffs' counsel] . . . [by] December 13, 2013."[11] The Defendants point out that,

---

[9]     Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

[10]     See Stevenson v. Great Am. Dream, Inc., No. 1:12-CV-3359-TWT, 2014 WL 3519184 (N.D. Ga. July 15, 2014).

[11]     [Doc. 52].

despite this firm deadline, multiple opt-in Plaintiffs submitted their consent forms in late December of 2013 and January of 2014.[12] To be sure, the FLSA does not "provide a standard under which a court should consider whether to include opt-in plaintiffs whose consent forms are filed after the court-imposed deadline has passed."[13] In Ruggles v. Wellpoint, Inc.,[14] the District Court for the Northern District of New York compiled a list of factors that courts have considered when confronted with untimely opt-in plaintiffs: "(1) whether 'good cause' exists for the late submissions; (2) prejudice to the defendant; (3) how long after the deadline passed the consent forms were filed; (4) judicial economy; and (5) the remedial purposes of the FLSA."[15]

Applying these factors here, the Court concludes that the parties who submitted their consent forms after the deadline may nonetheless opt-in. First, the consent forms at issue were submitted within only two months of the deadline. Given the modest delay, it is unclear how the Defendants would be prejudiced. Second, allowing the additional Plaintiffs to opt-in would serve the interest of judicial economy. As the Plaintiffs point out, if the Court denied their admission, "they would still be able to

---

[12]    Defs.' Mot. to Dismiss, at 2-4.

[13]    Ruggles v. Wellpoint, Inc., 687 F. Supp. 2d 30, 37 (N.D.N.Y. 2009).

[14]    687 F. Supp. 2d 30 (N.D.N.Y. 2009).

[15]    Id. at 37.

file separate causes of action against Defendant, who would still face the prospect of defending against their individual FLSA claims . . . [o]bviously, there is little economy in spawning identical FLSA lawsuits that themselves might be properly joined with this lawsuit in the future."[16] Third, the Court agrees with the Eighth Circuit's conclusion in Kelley v. Alamo that a "generous reading, in favor of those whom congress intended to benefit from the [FLSA], is . . . appropriate when considering issues of time limits and deadlines."[17] Accordingly, the Court will not dismiss the claims of the opt-in Plaintiffs referenced in the Defendants' Motion to Dismiss for Untimeliness. However, the "Plaintiffs are forewarned that any future motion to include additional opt-in plaintiffs would not be looked upon favorably by the Court."[18]

## IV. Conclusion

For these reasons, the Court GRANTS the Defendants' Motion to Compel Arbitration and Dismiss [Doc. 91] and DENIES the Defendants' Motion to Dismiss for Untimeliness [Doc. 89].

---

[16]    Id. at 37-38.

[17]    Kelley v. Alamo, 964 F.2d 747, 750 (8th Cir. 1992).

[18]    Id. at 38.

SO ORDERED, this 30 day of September, 2014.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge