## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MARTISHA STEVENSON, | ) | |
| ELISHA HUNTER, | ) | |
| Individually and on behalf of others | ) | |
| similarly situated | ) | |
| | ) | Case No. 1:12-CV-03359-TWT |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| THE GREAT AMERICAN DREAM, INC. | ) | |
| d/b/a PIN UPS, | | |
| Defendants. | | |

## JOINT MOTION TO APPROVE SETTLEMENT

Plaintiffs Martisha Stevenson and Elisha Hunter (collectively "Named Plaintiffs") and Defendant The Great American Dream, Inc. d/b/a Pin Ups ("Defendant") (collectively "the Parties") jointly move for approval of the Parties' settlement of this Fair Labor Standards Act ("FLSA") action, and in support thereof, show this Court as follows.

## I.    INTRODUCTION

On September 26, 2012, the Named Plaintiffs, on behalf of themselves and those similarly situated, filed this lawsuit against Defendants. The lawsuit alleges that Defendants misclassified Plaintiffs, current and former entertainers who worked at Pin Ups in Atlanta, Georgia as independent contractors.  The lawsuit alleges that the entertainers are employees under the federal Fair Labor Standards

1

Act ("FLSA"), 29 U.S.C. § 201, et seq.  The lawsuit alleged that Defendants failed to pay entertainers any wages whatsoever and charged them fines and fees in order to work in violation of the FLSA.  Defendants have denied these allegations.

The lawsuit was brought as a collective action under the FLSA. The Court granted Plaintiffs' Motion for Conditional Certification in August of 2013, certifying a collective of current and former entertainers who worked at Pin Ups. The period to join this case closed in December 2013. There are presently 87 Plaintiffs remaining in this action.  Opt-in Plaintiff Felicia Goodrum has informed Plaintiffs' counsel that she no longer wishes to participate in this case.

Discovery in this case took place in two phases.  The first phase was devoted mainly to the question of whether Plaintiffs are independent contractors or employees. The second phase of discovery was devoted to damages.

On December 31, 2013, the Court granted Plaintiffs' Motion for Partial Summary Judgment, finding that, as a matter of law, Plaintiffs are employees under the FLSA.  On May 15, 2015, the Court granted Defendant's Motion for Partial Summary Judgment, dismissing James Lee as a Defendant and finding that the Plaintiffs were not entitled to liquidated damages or a third year of damages under the statute of limitations based on Defendant's willfulness and good faith defenses. Plaintiffs' counsel and Defendant's counsel determined which Opt-in Plaintiffs were able to remain in the case based on those who actively responded to

discovery requests and the other Opt-in Plaintiffs were dismissed by order of the Court.

Plaintiffs and Defendant each calculated damages based on relevant discovery produced and based on their respective clients' records and knowledge of the matters at hand.  On April 20, 2016, the Parties attended mediation with Daniel M. Klein and were able to reach an agreement on core settlement terms.

## II.   DISCUSSION OF LAW REGARDING FLSA SETTLEMENT APPROVAL

Pursuant to the case law regarding settlement of FLSA claims, there are three ways in which claims under the FLSA can be settled and released by an employee.  First, the FLSA allows an employee to settle and waive his claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor.  See 29 U.S.C. § 216(c).  Second, in the context of a private lawsuit brought by an employee against an employer under § 216(b) of the FLSA, an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement and the district court approves the fairness of the settlement.  Schulte, Inc. v. Gandi, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946); Lynn's Food Stores, Inc. v. U.S., 679 F.2d 1350, 1353 (11th Cir. 1982); Taylor v. Progress Energy, Inc., 493 F.3d 454 (4th Cir. 2007).  Third, the parties to an FLSA claim may settle the claim without judicial approval if the plaintiff will receive all of the relief to which he would be entitled if his claims were proven.  Mackenzie v. Kindred Hospitals East, L.L.C., 276 F. Supp. 2d 1211, 1217 (M.D. Fla. 2003).  There is a presumption in favor of

approving a settlement as fair, but court review is appropriate to ensure fairness to the parties.  In re Dollar General Stores FLSA Litig., 2011 WL 3904609, *2 (E.D.N.C. Aug. 23, 2011).

The Parties agree that the instant action involved disputed issues.  The Parties further agree that the settlement negotiated and reached by the Parties at the mediation is a fair and just settlement of Plaintiffs' claims given the facts and legal authority applicable to this case.

### III.    SETTLEMENT DISCUSSIONS

During the second phase of discovery, the Named and Opt-in Plaintiffs provided good faith estimates.  At the same time, Defendant comprehensively searched its records to determine when each Plaintiff worked and for how long.

Twenty-three of the Opt-in Plaintiffs did not appear on Defendant's records as having worked at Pin Ups at all.  There were several more who showed as having many fewer days worked than their estimates.  Plaintiff's counsel attempted to contact each of these Opt-in Plaintiffs on multiple occasions and some responded with additional evidence such as witnesses or documents that attempted to show they worked at the club for more hours than the club records showed.  Fifteen of the opt-in Plaintiffs did not respond to counsel's requests for information.

On April 20, 2016, through the mediator Daniel P. Klein, counsel for the Parties negotiated a lump sum settlement.  This total amount of $575,000 was left to be allocated by Plaintiff's counsel among the Named Plaintiffs, Opt-in Plaintiffs

and attorney's fees and costs.  As stated above, there were 23 Opt-in Plaintiffs who did not appear in Defendant's records at all and several more who had very few hours or days worked according to Defendant's records.

## IV.   SETTLEMENT CALCULATION & DISTRIBUTION

## A. ALLOCATION OF PAYMENTS

Plaintiff's counsel determined a method to ensure that all Opt-in Plaintiffs received a settlement and those who had actively participated in the case received more than those who had ignored repeated contact attempts.  For those who had responded to counsel's (multiple) requests for information regarding their hours and days worked, each will receive a minimum of $1,000, regardless of whether they appeared in Defendant's records.  For those who had ignored the attempts by counsel to discuss the discrepancy between their estimate and Defendant's records, each will receive a minimum of $100, regardless of whether they appeared in Defendant's records.

The Named Plantiffs and remaining Opt-in Plaintiffs will receive the amount that Defendant's records search had established based on days and hours worked. The Named Plaintiffs will also receive an additional $20,000 each for their time and effort to initially bring the case to the attention of Plaintiff's counsel, the time spent in discovery and depositions and for attending the mediation.  Plaintiff's counsel will receive $2,479.50 for reimbursement of expenses and is requesting $138,740.67 for actual attorney's fees to date (this amount has since increased to over $142,000.00, but counsel has agreed to cap the amount at $138,740.67).  The attorney's fees amount will also cover any time and expenses related to distribution

for this settlement.

**B. SCHEDULE OF PAYMENTS BY DEFENDANT**

Defendant has agreed to pay the following amounts:

1. Three (3) business days following the Court granting Final Approval, Defendant shall mail a check for twenty-five thousand dollars ($25,000) to Plaintiffs' Counsel.

2. On or before sixty (60) days following the Court granting Final Approval, Defendant shall mail a second payment of twenty-five thousand dollars ($25,000) to Plaintiffs' counsel.

3. Beginning thirty (30) days following the second payment of twenty-five thousand dollars ($25,000) and for a period of forty-two months thereafter, Defendant shall send Plaintiffs' counsel twelve thousand five hundred dollars ($12,500) monthly.

The payments described above are to be secured by a Consent Judgment (also known as a confession of judgment) against Defendant in the amount of seven hundred fifty thousand dollars ($750,000).

**C. SETTLEMENT ADMINISTRATION AND SCHEDULE OF PAYMENTS**

Plaintiff's counsel will act as Settlement Administrator.  Subject to Court Approval, Plaintiff's counsel will make distributions to each Plaintiff according to Exhibit 2.

Checks that remain uncashed ninety (90) days after they are mailed will be stopped and the money returned to the Client Trust Account. Any participating

Plaintiff whose check was stopped will be allowed to contact Plaintiffs' Counsel and request that the check be reissued minus the cost of stopping the payment and re-issuing the check. The check will be reissued provided that the Participating Plaintiff's request is made on or before 90 days following the last scheduled mailing of checks as described in Section 8.3.   Any Settlement Funds remaining in the Client Trust Account ninety (90) days following the last scheduled mailing of checks will be forwarded to the Georgia Coalition Against Domestic Violence.

To minimize the settlement administration costs and ensure that the Plaintiffs receive the maximum amount possible, Plaintiff's counsel will make the following payments to Plaintiffs (*see* Exhibit 2):

1. An initial payment to each Plaintiff drawn from the first two payments by Defendant totaling $50,000.

2. An annual payment to each Plaintiff until such time as they have received their allocated settlement amount.

## D. NOTICE AND RELEASE OF CLAIMS

The Parties have agreed on the form and manner of notifying Plaintiffs of the proposed settlement.  (*See* Exhibit A-D of Settlement Agreement.)  The notices will inform each Plaintiff of the above information, including the total amount due to each individual Plaintiff.  Additionally, the notice will inform each Plaintiff that they will have 45 days to claim their settlement by sending a claim form to Plaintiff's counsel.  Plaintiffs may also opt out of the settlement by affirmatively informing Plaintiff's counsel of their intent to opt out according to specific instructions in the Notice.

7

### E.  NAMED PLAINTIFF INCENTIVES

Plaintiffs are requesting that each Named Plaintiff be paid an incentive award of $20,000 for their work on this case.  In addition to bringing the case to Plaintiff's counsel and meeting with Plaintiff's counsel to assist in drafting the complaint, the Named Plaintiffs have been deposed at length by Defendant's counsel, been subject to detailed discovery requests and attended the mediation held on April 20, 2016.  The awards are discussed in the settlement agreement and not opposed by Defendant's counsel.

### F.  SUMMARY OF THE NOTICE AND CLAIM FORM PROCESS

Plaintiff's counsel drafted a settlement agreement and Defendant's counsel provided input.  A final settlement agreement and consent judgment was signed by counsel for Plaintiffs and Defendants on June 10, 2016.  On that date, Plaintiff's counsel sent notices and claim forms to all Plaintiffs.  As of July 12, 2016, both Named Plaintiffs and 45 Opt-in Plaintiffs had returned signed claim forms, 40 Opt-in Plaintiffs have yet to return a form, and no Opt-in Plaintiffs have yet to reject the settlement.

WHEREFORE, the Parties jointly pray that the Court scrutinize their settlement; find it to be a fair resolution of their dispute and further order the dismissal of this action with prejudice, with this Court retaining jurisdiction over the matter until all consideration called for in the Settlement Agreement is satisfied.

Respectfully submitted, this 12th day of July, 2016.

**Wagner Johnston & Rosenthal P.C.**          **The Sharman Law Firm, LLC**

*/s/Kenneth J. Sokolov*                       */s/ Paul J. Sharman*
Kenneth J. Sokolov, Esq.                      Paul J. Sharman
Georgia Bar No. 666460                        Georgia Bar No. 227207
Wagner, Johnston & Rosenthal, P.C.            The Sharman Law Firm LLC
5855 Sandy Springs Circle, Suite 300          11175 Cicero Drive, Suite 100
Atlanta, Georgia  30328-4834                  Alpharetta, Georgia 30022
404.261.0500 Tel                              (678) 242-5297
kis@wjrlaw.com                                Paul@sharman-law.com

Attorney for Defendant                        Attorney for Plaintiffs

9

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MARTISHA STEVENSON,  )
ELISHA HUNTER,  )
Individually and on behalf of others  )
similarly situated  )
  ) Case No. 1:11-CV-03359-TWT
　　　　　Plaintiffs,  )
v.  )
  )
THE GREAT AMERICAN DREAM, INC. )
d/b/a PINUPS,  )
　　　　　Defendants.  　　　　JURY TRIAL DEMANDED

## CERTIFICATE OF SERVICE

I hereby certify that I have this day typed the foregoing JOINT MOTION TO APPROVE SETTLEMENT with one of the font and point selections approved in LR 5.1C and electronically filed it with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

This 12th day of July, 2016.

s/*Paul J. Sharman*
Paul J. Sharman
Georgia Bar No. 227207
The Sharman Law Firm LLC
11175 Cicero Dr., Suite 100
Alpharetta, Georgia 30022
(678) 242-5297
paul@sharman-law.com

Attorney for Plaintiff

10